**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BETTY WASHINGTON,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CONAGRA FOODS, INC.,** a ) <br> **Delaware Corporation,** ) <br> ) <br> **Defendant.** ) <br> ) | **CIVIL ACTION FILE NO.** <br><br> **1:12-cv-2057** |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, BETTY WASHINGTON, by and through the undersigned attorneys, and files this Complaint for Damages against the above-named Defendant respectfully showing the Court the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a citizen and resident of the District of Columbia. Plaintiff brings this action for the purpose of recovering all damages allowed by law for personal injuries she suffered as a result of the ingestion of a *Salmonella*-contaminated peanut butter manufactured by Defendant in the State of Georgia.

2. Defendant CONAGRA FOODS, INC. (hereinafter "ConAgra"), is a Delaware corporation with its headquarters and principal place of business located at One ConAgra Drive, Omaha, Nebraska 68102. Defendant ConAgra may be served with process by and through its registered agent in Gwinnett County, Georgia - the Prentice-Hall Corp. System, 40 Technology Parkway South, # 300, Norcross, Georgia 30092. At all times relevant hereto, ConAgra manufactured Peter Pan Peanut Butter and Great Value Peanut Butter, including the *Salmonella-*

contaminated peanut butter ingested by Plaintiff, at its plant located in Sylvester, Georgia. At all times relevant hereto, ConAgra was the seller of Peter Pan Peanut Butter and Great Value of Peanut Butter. Defendant ConAgra Foods, Inc. is subject to the jurisdiction and venue of this Court.

3.    This action is brought in federal court under 28 U.S.C. § 1332, Diversity of Citizenship. Complete diversity of citizenship exists between the Plaintiff and the Defendant. Damages in this action exceed $75,000.

4.    Personal jurisdiction exists in this venue because Defendant has done and continues to do substantial business in this jurisdiction.

5.    On October, 15, 2008, Plaintiff entered a tolling agreement with Defendant. Pursuant to the tolling agreement, the period commencing as of the effective date of the Agreement and including the date on which the Agreement was terminated ("the Tolling Period") shall not be included in computing the running of any statute of limitations, claims of laches, estoppels waiver, or other similar defense, legal or equitable, alleging any claim by Plaintiff that may later be filed against Defendant relating to the consumption of the peanut butter at issue in this case. The tolling agreement expired on September 1, 2011. As such, this action is timely brought prior to the expiration of the statute of limitations.

## TAG-ALONG ACTION

6.    This is a potential tag-along action and in accordance with 28 U.S.C. §1407, it should be transferred to the United States District Court for the Nothern District of Georgia for inclusion in *In re: ConAgra Peanut Butter Products Liability Litigation,* MDL 1845, Case No. 1:07-MD-1845 (Hon. Thomas W. Thrash, Jr.).

## FACTUAL ALLEGATIONS

7. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

8. On February 14, 2007, the United States Food and Drug Administration ("FDA") warned consumers not to eat Peter Pan and/or Great Value brands of peanut butter with a product code beginning with the numbers "2111," and announced a recall of the products by their manufacturer, ConAgra. The "2111" code represented peanut butter manufactured at ConAgra's Sylvester, Georgia peanut butter processing plant.

9. The FDA announced the link of 288 reported cases in 39 states of *Salmonella* serotype *Tennessee* to the consumption of the recalled peanut butter. On February 14, 2007, ConAgra ceased production of all peanut butter at its Sylvester, Georgia plant.

10. Soon thereafter, both ConAgra and the FDA performed environmental testing within the production areas of the Sylvester, Georgia plant. ConAgra found and confirmed the presence of *Salmonella* in at least eight different locations, and the FDA confirmed an additional two locations that tested positive for *Salmonella Tennessee*.

11. Most persons infected with *Salmonella* develop diarrhea, fever, and abdominal cramps 12 to 72 hours after infection. The illness usually lasts 4 to 7 days. In some persons, however, the diarrhea may be so severe that the patient requires hospitalization. In these patients, the *Salmonella* infection may spread from the intestines to the blood stream, and then to other body sites and can cause death unless the person is treated promptly with antibiotics. The elderly, infants, and those with impaired immune systems are those who are more likely to suffer a severe illness.

12. *Salmonella* bacteria live in the intestinal tracts of humans and other animals, including birds. *Salmonella* is usually transmitted to humans by eating foods contaminated with animal

feces. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*. Food may also become contaminated by the unwashed hands of an infected food handler, who forgot to wash his or her hands with soap after using the bathroom. *Salmonella* bacteria may also be found in the feces of some pets, especially those with diarrhea; humans can become infected if they do not wash their hands after contact with these feces.

13. Plaintiff purchased and consumed Defendant's contaminated peanut butter from jars with the following product codes: 2111-5258-0005-26C, 2111-6005-0023-37A, and 2111-6199-00020-02A (hereinafter referred to as the "Peanut Butter.")

14. Plaintiff was diagnosed with *Salmonella* on or about October 26, 2006.

15. Plaintiff's *Salmonella* and related illness was caused by consumption of the contaminated Peanut Butter.

16. Plaintiff has incurred and will continue to incur medical expenses, had suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and medical problems in the future as a direct and proximate result of their ingestion of the contaminated Peanut Butter manufactured and sold by Defendant.

## COUNT I – STRICT LIABILITY

17. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

18. Pursuant to the laws of the District of Columbia, a manufacturer that sells any product in a defective condition unreasonably dangerous to a user or consumer is strictly liable for any injury proximately caused by such product, provided that the manufacturer is engaged in the business of

selling such a product, and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

19. The Peanut Butter ingested by Plaintiff, which was designed, developed, manufactured, sold and/or supplied by Defendant, was in a defective condition unreasonably dangerous to a user or consumer because it contained *Salmonella*, a deadly pathogen.

20. The Peanut Butter ingested by Plaintiff, which was designed, developed, manufactured, sold and/or supplied by Defendant, was delivered to Plaintiff without any change in its defective condition. The Peanut Butter that Defendant designed, developed, manufactured, sold and/or supplied was used in the manner expected and intended, and was consumed by the Plaintiff.

21. Defendant owed a duty of care to Plaintiff to design, develop, manufacture, sell and/or supply food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. Defendant breached this duty.

22. Defendant owed a duty of care to Plaintiff to design, develop, manufacture, sell and/or supply food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. Defendant breached this duty.

23. Plaintiff suffered injuries and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that Defendant designed, developed, manufactured, and/or supplied, for which Defendant is strictly liable.

## **COUNT II - BREACH OF WARRANTY**

24. Plaintiff repeats, reiterates and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

25. Defendant is liable to Plaintiff for breaching express and implied warranties that it made regarding that adulterated product that Plaintiff purchased. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, Defendant expressly warranted, through its sale of food to the public and by statement and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

26. Plaintiff alleges that the *Salmonella*-contaminated food that Defendant sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

27. Plaintiff alleges that the *Salmonella*-contaminated food that Defendant sold to Plaintiff was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

28. As a direct and proximate result of Defendant's breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## **COUNT III - NEGLIGENCE**

29. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

30. Defendant owed a duty to Plaintiff to use reasonable care in the manufacture, distribution, and sale of their food product, which duty would have prevented or eliminated the risk that Defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. Defendant breached this duty.

31. Defendant had a duty to comply with all statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so

and was therefore negligent. Plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

32. Defendant had a duty to properly supervise, train, and monitor its employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so and was therefore negligent.

33. Defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, states, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so and was therefore negligent.

34. As a direct and proximate result of Defendant's negligence, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## **COUNT IV - NEGLIGENCE PER SE**

35. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

36. At all times relevant herein, Defendant had a duty to comply with all applicable federal, state and local regulations intended to ensure the purity and safety of their food products, including the requirements of D.C. St. § 48-101 *et. seq*.

37. Pursuant to D.C. St. § 48-101, no person shall, within the District of Columbia, by himself or by his servant or agent, or as the servant or agent of any other person, sell, exchange, or deliver, or have in his custody or possession with the intent to sell or exchange, or expose or

offer for sale or exchange, any article of food or drug which is adulterated within the meaning of D.C. St. § 48-103.

38. Pursuant to D.C. St. § 48-103, a food article shall be deemed to be adulterated if it bears or contains any poisonous or deleterious substance which may render it injurious to health.

39. Defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

40. As a direct and proximate result of the conduct of Defendant that was negligent *per se*, Plaintiff sustained injury and damages in an amount to be determined at trial.

## COUNT V – PLAINTIFF'S DAMAGES

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

42. As a result of the acts and omissions of Defendant as set forth herein above, Defendant caused or contributed to cause the following injuries to Plaintiff:

   a. Plaintiff has been caused to suffer physical injury, past, present and future pain and suffering, disability, impairment, lost capacity to enjoy life, mental anguish, and lost earnings in an amount to be proven at trial;

   b. Plaintiff has been caused to incur medical expenses and will in the future incur medical expenses an amount to be proven at trial;

   c. Plaintiff has been caused to suffer past, present and future fear and mental anguish concerning her present and future medical problems in an amount to be proven at trial.

## COUNT VI – PUNITIVE DAMAGES

43. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

44. The conduct of Defendant, as set forth herein above, was outrageous, and was malicious, wanton, reckless, or in willful disregard for Plaintiff's rights. Accordingly, punitive damages should be imposed against Defendant, to punish and deter Defendant from repeating or continuing such unlawful conduct.

## COUNT VIII – LITIGATION EXPENSES

45. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

46. Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the Plaintiff unnecessary trouble and expense. As such, Plaintiff is entitled to attorney's fees and costs.

**WHEREFORE, Plaintiff prays**:

(a) That process issue according to law;

(b) That Defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

(c) That Plaintiff be granted a trial by jury in this matter;

(d) That the Court enter a judgment against Defendant for all general and compensatory damages allowable to Plaintiff;

(e) That the Court enter a judgment against Defendant for all special damages allowable to Plaintiff;

(f) That the Court enter a judgment against Defendant serving to award Plaintiff punitive damages;

(g) That the Court enter a judgment against Defendant serving to award Plaintiff attorney's fees and costs of litigation;

(h) That the Court enter a judgment against Defendant for all other relief sought by Plaintiff under this Complaint.

(i) That the costs of this action be cast upon Defendant; and

(j) That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this 21st day of December, 2012.

  /s/ Christopher T. Nace
**PAULSON & NACE, PLLC**
Christopher T. Nace
1615 Hampshire Avenue, NW
Washington, DC 20009
(202) 463-1999
ctnace@paulsonandnace.com


  /s/ C. Andrew Childers
**CHILDERS, SCHLUETER & SMITH, LLC**
C. Andrew Childers
Georgia Bar No. 124398
(Official Entry of Appearance to be Filed
Once Transferred to MDL 1845)
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
(404) 419-9500
achilders@cssfirm.com